WILSON, &c.
vs.
DANIEL, &c.

---

CHANCERY.

Case 7.

December 13.

## Wilson, &c. vs. Daniel, &c.

### ERROR TO CLARKE CIRCUIT.

Judge CRENSHAW delivered the opinion of the court.

1. "Marriage operates as a gift to the husband of such personal property as is in possession of the wife at the marriage;" and as to her slaves since the act of 1846, it "gives him a contingent interest only." He does not take as a purchaser. (*See Clancey on Rights, p.* 2; 1 *Harrington*, 196.) He takes subject to any equities upon the property existing at the time of the marriage, unless created in fraud of his marital rights; and if good between the parties, binds him whether recorded or not.

2. Conveyance made after a treaty of marriage has commenced and is in contemplation, held fraudulent in the case cited in 7 *Monroe*, 469; 9 *B. Monroe*, 475.

3. A widow being about to marry C, by his consent conveyed slaves to the separate use of herself and children for her life, remainder to her children; she did not marry C, but afterwards married W, who was not addressing her when the deed was made—held that W was not a purchaser, that the conveyance was no fraud upon

his marital rights, and could not be set aside to the prejudice of the children, though the wife consented.

4. One defendant in error cannot assign errors against a co-defendant; he must prosecute a separate writ of error.

This is a suit in chancery instituted by Jesse M. Wilson against John Daniel, Nancy Wilson, and others, to set aside a conveyance, made by the said Nancy to said Daniel, on the 24th day of July, 1848, upon the ground, that said conveyance is in fraud of his marital rights.

Said Nancy Wilson was formerly the widow of —— Barker, and when she made said conveyance to John Daniel, a marriage was in contemplation between herself and Robert Creed. Indeed, the conveyance was made on the day before the marriage of herself and Creed was to take place. But it was made not only by the approbation, but at the request of said Creed. When the day arrived for this marriage, Creed's intended had changed her mind, and refused to marry him. The complainant afterwards made court to said Nancy, and was successful—and he and she were married in March, 1849.

The circuit court refused to set aside the conveyance, and the principal question presented for our decision is, whether the circuit court erred in its opinion.

The conveyance is made to Daniel in trust for the use of said Nancy, and her two children, Sarah Ann Elizabeth Jane Barker, and James Henry Barker, during the life of the said Nancy, and, at her death, for the use and benefit of said children. The conveyance was not recorded till several months after the marriage. The record of the conveyance, therefore, did not operate as notice to the complainant, and there is no sufficient evidence that he had actual notice of the conveyance prior to the marriage. Consequently, if he can be regarded as a purchaser for a valuable consideration by virtue of his rights acquired in the property of his wife by the marriage, the conveyance would be invalid as to him, inasmuch

WILSON, &c.
vs.
DANIEL, &c.

1. "Marriage operates as a gift to the husband of such personal property as is in possession of the wife at the marriage;" and as to her slaves since the act of 1846, it "gives him a contingent interest only." He does not take as purchaser. (*See Clancey on Rights, p.* 2. 1 *Harrington,* 196.) He takes subject to any equities upon the property existing at the time of the marriage, unless created in fraud of his marital rights; and if good between the parties, binds him whether recorded or not.

2. Conveyance made after a treaty of marriage has commenced and is in contemplation, held fraudulent in the case cited in 7 *Monroe,* 469; 9 *B. Monroe,* 475.

as deeds of trust are invalid as to creditors and purchasers without notice, unless recorded. But, whatever these rights may be, he does not acquire them as a purchaser. Marriage operates as an absolute gift to the husband of such personal property as is in the possession of the wife at the time of the marriage; and, as to her slaves, since the act further to protect the rights of married women, it operates to give him a contingent interest only. As to the character in which the husband acquires his rights in the property of his wife, *see Clancey on Rights,* 2. In the case of *Coleman* v. *Waples,* 1 *Harrington,* 196, it was decided that the husband acquired his rights to his wife's property by virtue of the marriage and *not as purchaser.* He must take subject to any equities or incumbrances upon the property at the time of the marriage, unless they were created in fraud of him. Said conveyance is good between the parties, and valid as to him, whether recorded or not, or whether he had notice or not, unless by the making thereof he was defrauded.

This case differs in principle from the case of *Hobbs* v. *Blanford,* 7 *Mon.* 469, and the case of *McAfee* v. *Ferguson,* &c. 9 *B. Monroe,* 475. In those two cases the conveyances were set aside, upon the ground that they were made after the treaty for marriage had commenced, and was then in contemplation. In this case, no treaty for marriage had commenced, none was in contemplation between the complainant and said Nancy at the time the conveyance was made. Indeed, they were not acquainted with each other at that time, from anything that appears in the record. Nancy then contemplated marrying Robert Creed.

The proof shows that the deed was made with the consent and approval of Creed, so it was not intended as a fraud upon him; and even had it been so intended, the complainant could not avail himself of a fraud intended to operate upon another, and not upon himself.

In *Roper on Property, vol.* 1, 163, the case of the Countess *of Strathmore* v. *Bowes,* is referred to, and the following language used: "Lady Strathmore, upon the death of her first husband, became entitled to considerable property under her father's will. She, in the year 1777, being about to marry a person named Grey, conveyed, with his consent, and for the purpose of providing for her children, all her real and personal property to trustees for her sole and separate use, notwithstanding any future coverture. Having altered her intention in regard to Mr. Grey, she, a few days after the execution of the settlement, married the defendant, Bowes, who insisted, in a cross bill filed by him in the cause, that he not having notice of the settlement, it was fraudulent, and in derogation of his marital rights. But the deed was established against him, because there was no fraud practised upon *him, he* not having been in contemplation of any of the parties, at the time when the settlement *was* executed."

This case of *Strathmore* v. *Bowes* is analagous, in every essential feature, to the one under consideration. It cannot be said, therefore, that the deed of trust to John Daniel is in fraud of the marital rights of the complainant.

In the answer of Mrs. Wilson, she unites in the prayer of her husband to set aside the deed. But it cannot be done at her instance, simply because she has changed her mind upon the subject. The deed was made freely and voluntarily by her, at her own instance; it creates rights in third persons, and is meritorious in itself, and she cannot have it destroyed at her pleasure.

Nancy Wilson assigns cross errors, and complains that no decree was given against Daniel for hire. Her assignment of errors cannot be noticed, as the errors which she assigns are against a co-defendant in error, and not against the plaintiff in error. If any error has been committed to her prejudice, she can only avail herself of them, by the prosecution by

3. A widow being about to marry C, by his consent conveyed slaves to the separate use of herself and children for her life, remainder to her children; she did not marry C, but afterwards married W, who was not addressing her when the deed was made—held that W was not a purchaser, that the conveyance was no fraud upon his marital rights, and could not be set aside, to the prejudice of the children, though the wife consented.

4. One defendant in error cannot assign errors against a codefendant; he must prosecute a separate writ of error.

her of a writ of error. Wherefore the decree is affirmed.

We would suggest that, as the slaves were conveyed to Daniel for the use of Mrs. Wilson and children, she might desire to have possession of them, and if such desire shall be made known to the court, she might be permitted to take the slaves into her possession, provided security be given that the slaves shall not be removed from the State, and shall be forthcoming at the death of Mrs. Wilson for the use of her children, Sarah Ann Elizabeth Jane and James Henry Barker. This security seems to be necessary, from the fact, that the amended answer of Daniel is made a cross bill, in which danger is expressed of the removal of the slaves, if placed where complainant can control them, and the cross bill is not answered.

*Hanson* and *Smith*, for plaintiffs ; *Farrow* and *Peters*, for defendants.